HARGIS v. THE KANSAS CITY, CLINTON & SPRINGFIELD RAILWAY COMPANY, *Appellant.*

1. **Railroad:** RIGHT OF WAY: LIMITATION. Where a land-owner orally agreed to give to a railroad company the usual right of way and the company entered thereon and exercised actual and exclusive possession of part of a strip of one hundred feet under color and claim of title to the entire strip, such possession for the necessary length of time will afford the company a title under the statute of limitations to such entire strip.

2. ———: ———: PRESUMPTION. Even if there was no specification of the width of the right of way, so given, the entry and occupation by the company will, in the absence of anything to the contrary, be regarded as including the entire width of land authorized by law to be taken for railroad purposes.

3. ———: ———: PURCHASER WITH NOTICE. One purchasing with the knowledge or with the means of knowledge of the company's claim on such entire strip will purchase subject thereto.

*Appeal from Cass Circuit Court.*—HON. C. W. SLOAN, Judge.

REVERSED.

Hargis v. The Kansas City, C. & S. Ry. Co.

*Wallace Pratt* and *I. P. Dana* for appellant.

(1) · Defendant's predecessor entered upon the land in question and constructed its railroad there with permission and under a grant of right of way from G. W. Browning, the then owner, and it and its successors, including defendant, have ever since maintained and operated said railroad. Therefore neither said Browning nor any of his successors in estate could maintain ejectment of said land. Sedgwick and Wait on Trial of Title to Land [2 Ed.] secs. 834, 676; *Pryzbylowicz v. Railroad*, 3 McCrary, 586; *McAuley v. Railroad*, 33 Vt. 311; *Provolt v. Railroad*, 57 Mo. 261; *Baker v. Railroad*, 57 Mo. 265; *Gray v. Railroad*, 81 Mo. 134; *Bradley v. Railroad*, 91 Mo. 499. (2) And, although the grant was by parol, yet, as the railroad company entered under it and expended labor and money on the strength of it, the statute of frauds does not affect the grant, and both the grantor and his successors in estate are estopped from questioning or repudiating it. *House v. Montgomery*, 19 Mo. App. 175; *Chiles v. Wallace*, 83 Mo. 93. (3) Plaintiff took the land subject to a grant for a railroad, made by his predecessor, Browning, and with actual knowledge of its occupation by the railroad company. He was therefore estopped from suing for its recovery. See cases cited last above. Also Sedgwick & Wait, *supra*, sec. 723a and cases there cited; *Connor v. Goodman*, 104 Ill. 366; *Vaughn v. Tracy*, 22 Mo. 415; *Meier v. Blume*, 80 Mo. 179; *Mason v. Black*, 87 Mo. 341–2; *Woods v. Farmere*, 7 Watts. (Pa.) 382. (4) And such knowledge made it his duty to inquire and ascertain the nature and extent of the railroad company's claim. Failing to do so the law treats him precisely as though · he had inquired and had learned all that might have been ascertained upon inquiry. *Hughes v. U. S.*, 4 Wall. 232; *Shumate v. Reavis*, 49 Mo. 336; *Fellows v. Wise*, 55 Mo. 413;

*Reilley v. Railroad*, 94 Mo. 608; Wade on Notice, secs. 275, 280. (5) Further, the nature of the corporation occupying the land in controversy, and the extent of its power under the laws of the state to take and hold real estate, and the use made by it of the land were matters of general knowledge, and the plaintiff was bound, as the courts are, to take notice of them. These facts were conclusive on plaintiff as well as on defendant, as to the extent and character of the latter's claim. R. S. Mo. 1879, sec. 765; *Railroad v. Rayl*, 3 A. & E. R. R. Cases, 182; *Day v. Railroad*, 20 A. & E. R. R. Cases, 364; *Railroad v. Cochran*, 3 Lea (Tenn.) 478; *Prather v. Tel. Co.*, 14 A. & E. R. R. Cases, 1; s. c., 89 Ind. 501; *Campbell v. Railroad*, 9 West. Rep. 371; s. c., 110 Ind. 490. (4) (*a*) Defendant's predecessor entered upon the land in controversy, claiming a strip of land one hundred feet wide, with the knowledge and consent of Browning, the then owner of the land, and under a grant from him; the entry was under color of title and said company and its successors continued for more than ten years thereafter in actual, open, notorious, exclusive and continuous possession of a part of said land, claiming the whole, and exercising, during such possession, the usual acts of ownership over it. No matter what questions may be raised as to the sufficiency of the grant, such entry and occupation gave a good title to the whole to defendant and its predecessors by virtue of adverse possession under the statute of limitations of this state. No written instrument was necessary to create color of title. R. S. of Mo. 1879, secs. 3219 and 3223; *Rannels v. Rannels*, 52 Mo. 108; *Mylar v. Hughes*, 60 Mo. 110; *Cooper v. Ord*, 60 Mo. 431; *Hughes v. Israel*, 73 Mo. 538, 547; *Powell v. Davis*, 54 Mo. 318; *Cunningham v. Snow*, 82 Mo. 592; *Bank v. Fife*, 95 Mo. 126; *McCall v. Neely*, 3 Watts. (Pa.) 72. (*b*) And this is equally as true if the grant be considered an easement. *House v. Montgomery*, 19 Mo. App. 170,

175, 182; *Welsh v. Railroad*, 19 Mo. App. 133; *State v. Wells*, 70 Mo. 637. (*c*) And the defense of adverse possession for the statutory period is permissible under the general denial in defendant's answer. *Hill v. Bailey*, 8 Mo. App. 85; s. c., 76 Mo. 454; *Nelson v. Brodhack*, 44 Mo. 596; *Campbell v. Gas Co.*, 84 Mo. 368; *Fulkerson v. Mitchell*, 82 Mo. 20, 21. (*d*) The evidence showed the defendant to be the legal successor of the company which made the original entry, so that there was privity between the successive occupants, and privity in possession applies to constructive possession under color of title, as well as to actual possession. *Menkins v. Blumenthal*, 27 Mo. 203; *Crispin v. Hannavan*, 50 Mo. 549. (*e*) And such possession vested a good title in defendant. *Ekey v. Inge*, 87 Mo. 495; *Crispin v. Hannavan*, *supra*. (*f*) The nature of the entry, the purposes for which the land was given and used, the power of the grantee to take and hold it—all are important and should be considered in determining the extent and character of the occupant's claim, and in the case at bar would be conclusive on those points, even if the original entry had not been with color of title defining the extent of defendant's claim. R. S. Mo. 1879, sec. 765; *Railroad v. Cochran*, 3 Lea (Tenn.) 478; *Railroad v. Rayl*, 3 A. & E. R. R. Cases, 182.

*Boggess & Moore* for respondent.

(1) It is nowhere asserted or pretended in the record, save the petition only, that any one ever supposed that Browning, or any one claiming under him, could eject the respondent from the possession of its roadbed. This is sufficient response to appellant's second point, division *a*. It is perhaps enough also as to division *b*. But will say that appellant's right, however large or small, rests not in grant, but upon mere license, executed by the expenditure of large sums of money and great labor, from which estoppel arises.

So it will be seen respondent does not seek to revoke or otherwise affect the license, only to limit appellant's rights thereunder.    This we deem sufficient response to the appellant's third propositions.    (2) As to respondent's third proposition, division *c*, the conclusion drawn from the premises is a *non sequitur*.    It is there predicated that because the company had the right to take, therefore, it did take a given quantity of land, whereas it did not take anything under its right so to do under the statute.    It did not in any sense exercise or seek to exercise the right of eminent domain.    It entered under a license, and occupied thereunder a strip twenty-five feet wide.    It was under no duty or obligation to and did not occupy more.    As a correlative it cannot claim more.    Its rights and duties were co-existent and necessarily co-extensive, and whatever it had a right to claim it was bound to occupy so far as affects third persons; and as a corollary of this proposition what it did not occupy, under the license, it cannot claim.    Hence no person was bound by the extent or boundary of any claim outside of and beyond the actual occupancy.    The company's rights under the statutes were defined by General Statutes, 1865, page 332, section 2, as follows :    " *   *   * To lay out its road not exceeding one hundred feet in width, and to construct the same; and, for the purpose of cuttings and embankments, to take as much more land as may be necessary for the proper construction and security of the road.   *   *   * "    The method of taking and appropriating such land is provided by section 1 (*et seq.*), General Statutes, 351.    The record fails to disclose any attempt to exercise such statutory right.    (3)   To our minds appellant's fourth proposition, division *a*, does not merit serious consideration; however, as it is substantially reproduced in subdivision *f* of the same proposition, we shall give some attention to them both in our next paragraph, which we hope to make cover the whole

ground.   When that is done we shall be content without discussing any other of the numerous points in the brief of the learned attorneys for appellant.   (4)   On and ever since the day that Browning gave the right of way, as it is called, he, and those claiming under him, have had the legal title to all said land, subject to the license given by him to the railroad company, which never has had title, they held successively, in fact, and constructively the possession of all thereof, except what the railroad company had in its actual possession—*pedis possessio*—its roadbed.   *Griffith v. Schwenderman*, 27 Mo. 412; *Schultz v. Lindell*, 30 Mo. 310; *Bradley v. West*, 60 Mo. 33.   (5)   Complaint is made in the assignment of errors of the action of the court below, in giving and refusing instructions as asked by the appellant.   Such alleged errors are not, however, discussed in the brief.   We are, therefore, at a loss to determine if said assignment is serious or merely perfunctory.   We only have this to say at present as to the instructions.   A stranger medley of writing called instructions has perhaps never been presented for our consideration.   We shall not undertake to discuss them now. If we find the gentlemen on the other side are serious about the matter, we can attend to it at the oral argument.   There is in these instructions, as asked by the appellant, a worse confusion of ideas and legal phraseology than there was of languages at the Tower of Babel.

RAY, C. J.—This is an action of ejectment in common form, brought in March, 1886, in the circuit court of Cass county.   On its face the petition seeks to recover the described quarter section, but the answer of defendant disclaims all interest therein, except as to the strip or right of way of one hundred feet in width.   As to this strip or right of way, defendant sets up and claims that in 1870 or 1871 its predecessor in title entered and

located and constructed the railroad thereon with the knowledge and consent, and by agreement with the then owner of said land, and in accordance with said agreement appropriated for the right of way and railroad said strip of one hundred feet, being fifty feet on each side of the center line of said track, and that defendant, and those under whom it claims, have ever since continuously claimed and occupied the same for said purposes.

The case was tried by the court, and plaintiff recovered judgment for thirty-seven and a half feet on each side of a strip of twenty-five feet, through the middle of which the railroad track is actually located and constructed, and which plaintiff concedes defendant has the right to hold and enjoy. The real controversy, therefore, is as to the remaining seventy-five feet, being the two strips of thirty-seven and a half feet each on each side of said twenty-five feet strip through the center of the one hundred feet strip or right of way.

Defendant admits that the plaintiff has the valid record title by warranty deed to the quarter section described in the petition, and plaintiff concedes that defendant is the legal successor to the St. Louis, Lawrence & Denver Railway Company, which about the year 1870 built its railroad and laid its track across said quarter section. At that time, in 1870 or 1871, one Browning was the owner and resided on this quarter section. It is conceded that before the said company entered upon the land said Browning said he would give the right of way; that he was present whilst the engineers were locating the same, and subsequently declared that he had given the right of way. But plaintiff contends that this entry was under a mere license, and that the company did not occupy thereunder more than twenty-five feet, and therefore can claim to that extent, but no further. In other words, the position of plaintiff is, that Browning and those claiming under him had and have the legal title to the whole quarter

section, subject to the license given by Browning to the railroad company, and that they have the actual and constructive possession to all of it, except what the railroad company has in its actual possession, that is the roadbed on which the track is actually laid.

The learned and able counsel for plaintiff has pointed out that a right of way, properly so called, is an easement, an interest in land of another, and ordinarily it can only be acquired by deed, or what is equivalent thereto, and that a parol license is insufficient for that purpose. So, too, he concedes that a parol license when executed operates by way of estoppel, and may ripen into title by prescription, but claims that the right or title thereunder extends in no case beyond the boundary of the executed license. The propriety in general of these views may be conceded, but their application in given cases, such as the one now before us, may be, and often is, somewhat difficult. How far, for example, with respect to the possession, shall the license, regarding the transaction in question, as of that character for the present, be deemed to have been executed. This may depend, we think, upon a variety of conditions and circumstances presented by particular cases. Obviously in cases like the one now under consideration and review, the principal use of the strip of land given for the railroad will be to support the railroad track or tracks over which the trains will run from time to time. The expenditure of labor and money, which creates the equitable estoppel, if any is created at all, as against the land-owner and his grantees, is made upon that portion. But should the license, if such it is, be held to be executed only so far, and the right of possession taken thereunder be limited to the actual roadbed in cases of this sort, where the facts are, as in the record before us?

Perhaps a few citations from the evidence, which is undisputed in this behalf, will best show what actually took place, with reference to the strip in question,

between the original land-owner and the original company, making its entry thereon.    A. C. Briant testified: "I was interested in having road built, and, with John Bartleson and some one else, was appointed a committee to get right of way. Bartleson and I went to Dr. Browning's house and talked with him about it and he said he would give the right of way for the road." And on cross-examination: "John Bartleson and I and some one else, I don't remember who, were on a committee to get right of way. We saw Dr. Browning between preliminary survey and permanent location of road; he said: 'I'll give the right of way.'"

John C. Bartleson testified: "Through the company's attorney, Mr. Van Waggoner, of St. Louis, I was employed to assist in procuring the right of way for said railroad through the section of country in which I then lived, and in company with Mr. Van Waggoner went to George W. Browning, who had full control and possession of this Duncan farm, to secure right of way across same, and in my presence and hearing, said Browning granted and pledged to Mr. Van Waggoner a right of way for said railroad across and through his said land, the Duncan farm. Mr. Browning granted this right of way freely, fully and without any reservation, and the railroad was constructed across his land without any opposition from him or any one else, he, at that time, residing on this farm, where he resided for a long time thereafter. He was, to my knowledge, a strong supporter of the railroad and anxious for its construction."

It is obvious upon this evidence that said Browning intended to give, and did verbally agree to donate, the right of way. As to the extent thereof, it appears, we think, that he intended and expected the same to be the usual width of one hundred feet. For example, the witness, A. C. Briant, testifies among other things, that the "railroad track was built across it about 1871; was there when survey was made and when road was located and know it was staked off; there was more than one

line of stakes—I think there were three; there was a
center line and two outside lines which were, I think,
one hundred feet apart; I never measured the distance,
but judged from the looks. Browning was there when
the road was staked off; there were eight or ten men
locating it; they had usual instruments of railroad
engineers. * * * Dr. Browning was there when the
stakes were set."

Bartleson says: "As I understood it, the right of
way granted by Mr. Browning was of the usual width
granted in that neighborhood to the railroad; I think
the width of the right of way granted was a hundred
feet; it was the full right of way, all that was asked by
the railroad, but I would not state that there was any
mention in that conversation of any specific width; to
the best of my recollection this right of way was granted
in February or March, 1871, and it was granted by Mr.
Browning at his place of residence on said Duncan
farm."

Jackson Farrell testifies: "Me and Dr. Browning
had a contract to furnish ties to that road; we sold
them for twenty-five cents a tie and delivered them on
the railroad; Dr. Browning lived about a quarter of a
mile north on same quarter section where we delivered
ties. Dr. Browning told me he had given the right of
way for the railroad and was glad it was being built,
and that he would try and get a switch, and could then
sell his timber; the Doctor did not say to me what width
he had given; he told me that he voted for the bonds to
help the road."

This shows, we think, that said Browning was will-
ing to give and did verbally agree to give what the rail-
road company was asking, that is the usual right of way
or such as the corporation could acquire in proper con-
demnation proceedings. But even if there was no
specification or agreement as to the width of the right
of way so given, then, in the absence of anything to the
contrary, we think the entry and occupation and

construction of the railroad across the quarter section, under the said permission and verbal donation, is to be construed as an appropriation by the corporation to the extent the law authorized it to take land for right of way for railroad purposes. The company was not, it is true, and, as is suggested by counsel, proceeding to condemn the land under the statute which limits the amount taken to an amount not exceeding one hundred feet. In such proceedings under the statute the company may, by the proper steps, appropriate at its option; less than one hundred feet, but if the company fails to designate and limit the amount, it has been held that its entry and construction of the road must be regarded as an appropriation of the amount authorized by law. *Railroad v. Cochran*, 3 Lea (Tenn.) 482; *Prather v. Tel. Co.*, 89 Ind. 501; *Day v. Railroad*, 20 Am. & Eng. R. R. Cas. 359.

In some of the cases the corporations have sought to limit their liability to the amount actually occupied, but have been held to a liability for the amount provided by law, unless their intention to take less has been appropriately manifested. Suppose, for example, that the railroad in question had without the license or leave of said Browning, but under circumstances otherwise similar, entered upon and constructed the railroad over this quarter section, could it, we may ask, limit its liability to the twenty-five feet actually occupied by the roadbed in an action for damages by the land-owner? Although the proceeding was not under the statute, yet, we apprehend, that for sake of certainty, if for no other reason, the rule of law as to width, as shown by the statute, should prevail in the absence of a proper and definite showing on the part of the company of its intention to appropriate less. So, too, in this case, supposing there was no definite agreement as to width of the right of way, but an intention on the part of the land-owner to give the right of way, then we think the railroad company in entering thereunder, and building its road

at large expense, acquired the right of way of the extent authorized by law. The land-owner has not in the case before us manifested his intention to give less than the company could acquire under the statute, nor has the company sought to limit its appropriation to any less amount, and it seems to us that the only rule that would be fair and just to both parties in most cases of this sort, so far as extent of appropriation is concerned, is the rule which the law provides. Authorities are abundant to this effect, and a number of them are cited in the briefs of counsel for defendant.

In the case of *Campbell v. Railroad,* 110 Ind. 490, to which we are referred, the company took possession with the license of the owner, whose grantee after the construction of the railroad sued the company in an action of ejectment. The court say in the course of its opinion: "When therefore it appeared that the appellee with the leave and license of Joseph Campbell, under whom appellant claims title, had entered upon and taken possession of the strip of land described in the complaint herein, and upon the faith of such license had expended large sums of money in the construction and maintenance of its line of railroad thereon, it was properly held, we think, that appellee's right of way, thus acquired in the absence of any limitation thereon appearing to the contrary, extended to the full statutory width of six rods or one hundred feet."

If then the original land-owner, Browning, intended to give the whole one hundred feet, and did so orally, as we think, the evidence indicates, and the original corporation as he knew intended to and did appropriate that amount as shown by its surveys and locations and went into possession thereof claiming one hundred feet, and thereafter constructed without objection the railroad thereon, with said expenditures of money and labor in reliance upon said oral agreement, why, we may ask, if the equitable estoppel arises as to any part of the strip does it not also arise and extend to the

whole ?   It is, we think, clear that said Browning himself could not subsequently repudiate the transaction in whole or in part.    Nor did he ever seek so to do though he continued to reside on said quarter section for some years thereafter until his death.

So far as plaintiff is concerned the evidence shows, we think, that he purchased with knowledge of the defendant's claim upon the whole strip, or under such conditions and circumstances as subjects him to the equities which existed as between the original parties. He testifies as follows :   ''I first knew the quarter section about 1875 and Dr. Browning was then living on it and the railroad then ran across it and has ever since. I first owned the quarter section in 1880; bought it in September of that year of Mr. Selecman and sold it next year to Mr. Barnett, and he sold it to Gill to whom I made the deed in 1881; did not own it again until July, 1883, when I bought it from B. F. Hargis and have owned it since; J. E. George is now in possession and has been for some time; I traded it to him for some land in Jackson county on condition that after this suit is settled he shall have all except fifty feet on each side of the railroad, but no deeds have passed yet; knew the railroad ran across the quarter when I bought it.''

It also appears from plaintiff's own testimony that when he purchased the land there was a section house built by the company, extending as plaintiff himself says over fifty feet and as far out to the south as the claim of the right of way.   Other evidence shows that the section house had been built as early as 1872, and had been occupied thereafter by the employes and was there at the date of plaintiff's purchase.   With knowledge of this sort as to the possession by the railroad or railroads, the plaintiff is, we think, chargeable under the law with actual notice, or means of knowledge of the defendant's claim.   If he did not in fact know, he could and should have inquired as to the extent of the defendant's claim of title.   Plaintiff was

chargeable with the knowledge that under the law the corporation could take to the extent of one hundred feet. He bought the quarter section subject to the donation made by said Browning, his predecessor in title to the railroad company, and was aware of its possession as above stated and this, we think, is sufficient to estop him from claiming as an innocent purchaser for value.

II.    As before stated, the evidence, we think, shows the original corporation was put in possession of the right of way, consisting of one hundred feet, by the said owner of the land at that time, and that the entry of said corporation was with color and claim of title to said extent and width. Said original corporation and successor remained in the actual and exclusive and continuous possession of the twenty-five feet, at least, under color and claim of title to the whole strip, exercising in all that time such usual acts of ownership as the nature of the property permitted. This is, we think, a possession of the whole strip and gives defendant title under the statute of limitations.

A number of other questions are suggested and discussed in briefs of counsel, but their consideration is unnecessary to the proper disposition of the case, and need not be further noticed.

For the reasons hereinbefore stated, the judgment of the circuit court is reversed, in which all the judges concur.