ALLEN v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN
RAILWAY COMPANY, *Appellant.*

Division One, January 26, 1897.

1. **Lease, Construction of:** ACCRETIONS. A lease for thirty years
described the demised land by its boundaries, the eastern being the
Mississippi river, and as containing "145 acres more or less," and
provided that the rent after a designated time should be a certain per
cent of the value, to be determined by appraisements. *Held,* that in
such appraisements the accretions formed by the river after the exe-
cution of the lease should be included.

2. ———: ———: EVIDENCE. Evidence of the appraisers that in
making their estimate they went over the whole tract including the
accretions, was competent to identify the land and was not objection-
able as varying or contradicting their report.

3. **Appellate Practice:** WAIVER. A defendant who on the trial
admits the correctness of a map stating a railroad right of way to be
eighty feet in width will not be heard to object to it on appeal.

*Appeal from St. Louis City Circuit Court.*—HON.
DANIEL DILLON, Judge.

AFFIRMED.

*Martin L. Clardy* and *Henry G. Herbel* for appel-
lant.

(1) The court erred in admitting the testimony of
Michael Hammel regarding the acts and intentions of
the appraisers, and his interpretation of their award,
which were o bjected to by defendant. *Wyatt v. Rail-
road,* 14 S. E. Rep. 683; *Turner v. Williams,* 10 Wend.
141. (2) The court erred in refusing the declarations
of law and finding of facts asked by defendant. See
authorities cited under point 3. (3) The court erred

in its finding of facts and judgments in this case, which should have been for the defendant, instead of the plaintiff. *Garred v. Macey*, 10 Mo. 164; *Curry v. Lackey*, 35 Mo. 394; *Wyatt v. Railroad*, 14 S. E. Rep. 683; *Turner v. Williams*, 10 Wend. 141; *Boxley v. Stevens*, 31 Mo. 203; *Fox v. Missouri School*, 120 Mo. 358; *McNees v. Ins. Co.*, 61 Mo. App. 340; *Squires v. Anderson*, 54 Mo. 196. (4) The court erred in overruling defendant's motion for a new trial.

*Hiram J. Grover* for respondent.

(1) If a man acquires a tract of land by deed, in which it is described by metes and bounds, and as bounded on the east by the Mississippi river, and containing one hundred and forty-five acres, more or less, and after his acquisition, in the course of twenty years, sixty-four and eighty-eight hundredths acres are added by accretion to his river front, he owns the sixty-four additional acres and can maintain title to them under the description contained in his deed. That is to say, under his deed reciting that the tract contained one hundred and forty-five acres, that elastic eastern boundary line of the Mississippi river, and the right of accretion enables him to maintain title to, and retain possession of two hundred and nine and eighty-eight hundredths acres, by reason of his ownership of the original riparian tract—the up-land. The additional acres actually exist as part of the described premises, and the law does not permit itself to be duped into the supposition that they do not exist, by the fact that the original title recited that the tract then contained "one hundred and forty-five acres more or less." *Rhodes v. Raymer*, 6 Ohio St. 68; *Cruikshanks v. Wilmer*, 93 Ky. 19; *New Orleans v. United States*, 10 Pet. 662; *Jefferis v. Land Co.*, 134 U. S. 189; *Nebraska v. Iowa*, 143 U.

S. 369; *Municipality v. Cotton Compress*, 18 La. 219; *Smith v. Public School*, 30 Mo. 290; *St. Louis Public Schools v. Risley*, 40 Mo. 356; *Benson v. Morrow*, 61 Mo. 353; *St. Louis v. Lemp*, 93 Mo. 447; *Tatum v. St. Louis*, 125 Mo. 647; *Minton v. Steele*, 125 Mo. 181. (2) The Mississippi river, although it may gradually change its bed or channel, is just as fixed a boundary in the eye of the law as one that does not change. *Jones v. Johnson*, 18 How. 155; *Nebraska v. Iowa*, 143 U. S. 360; *Naylor v. Cox*, 114 Mo., top p. 244. (3) A lessee of a riparian tract for a term of thirty years is the owner of the tract for thirty years, and by every decision ever rendered on the subject, is entitled to possess and use the accretions formed during his term. *Cobb v. Lavalle*, 89 Ill. 331; *Williams v. Baker*, 41 Md. 523; *Cruikshanks v. Wilmer*, 93 Ky. 19; *Rhodes v. Raymer*, 6 Ohio St. 68; Gould on Waters (1891), par. 166, p. 316; *Rutz v. Kehr*, 143 Ill. 558. (4) Where the lessor of a riparian tract, which, after the lease is enlarged by accretion, seeks to lease the accretion to a third person, the law as against the landlord gives the possession of the accretion to the original lessee of the up-land. The plaintiff could not have taken possession of the accretion and cut her tenant off from the river front. *Rutz v. Kehr*, 143 Ill. 558. (5) The acts of the parties under the lease determine and define what constituted the leased property or lot of ground at the end of the first and second ten years of the term. In 1882 they followed the law. The practical interpretation of the contract by the parties is a sure guide in such matters. *Topliff v. Topliff*, 122 U. S. 121; *District of Columbia v. Gallaher*, 124 U. S. 506; 11 Wall. 566; 2 Wall. 367; 10 Wall. 728; 6 Wall. 773; 9 Wall. 50; 11 Am. and Eng. Ency. of Law, p. 518.

BRACE, J.—This is an action for rent accrued under a lease made by Thomas Allen and Ann R. Allen, his wife, on the first day of May, 1872, to the St. Louis & Iron Mountain Railroad Company. So much of said lease as is material to the present inquiry is as follows:

"This deed of lease, made and entered into, in duplicate, this first day of May, A. D. eighteen hundred and seventy-two, by and between Thomas Allen and Ann R., his wife, of the city of St. Louis, and state of Missouri, of the first part, and St. Louis & Iron Mountain Railroad Company, of the same place, of the second part, Witnesseth: that the said parties of the first part, in consideration of the rents, covenants and agreements hereinafter reserved and contained, and which, on the part and behalf of the said St. Louis & Iron Mountain Railroad Company, their heirs, executors, administrators and assigns, are to be paid, done and performed, do, by these presents, grant and lease to the said St. Louis & Iron Mountain Railroad Company of the second part, the following described lot of ground in township forty-four (44) north of range seven (7) east, and being United States survey number nine hundred and four (904), situated east and west of the St. Louis & Iron Mountain Railroad, at the junction of the river Des Peres with the Mississippi river, in the county of St. Louis and state of Missouri, containing one hundred and forty-five (145) acres, more or less; bounded north by river Des Peres, east by Mississippi river, south by South Carondelet sub. *et al.*, west by survey line and Jefferson Barracks road.

"To have and to hold the said lot of ground with its appurtenances, unto the said St. Louis & Iron Mountain Railroad Company, their heirs, executors, administrators and assigns, for the term of thirty years, next ensuing from and after the first day of May, A. D. 1872, yielding and paying therefor to the said

Thomas Allen, his executors, administrators, or assigns, for the ten first years of the said term, the yearly rent or sum of forty-five hundred dollars, payable semi-annually, and for which said rent the said party of the second part has executed herewith their twenty promissory notes, payable to the said Thomas Allen, or order, as follows:     *     *     *

"And for the second ten years of the term herein granted next after the expiration of the above ten years, the said party of the second part, their heirs, executors, administrators, and assigns, shall yield and pay for the said leased property a rent equal to five per cent per annum, on the value, at the end of the said first ten years, of the said lot of ground, exclusive of buildings, payable semiannually; said value to be ascertained and determined at the expiration of the said ten first years granted, by three disinterested, impartial and judicious householders, in the vicinity of the property, one to be chosen by the said Thomas Allen, or his legal representatives or assigns, and one by the said party of the second part, their heirs, executors, administrators or assigns, and the two appraisers thus chosen, if unable to agree, shall select a like third person, and the three persons thus selected shall value said leased property, exclusive of buildings, and if the said party of the second part their heirs  or assigns, shall neglect or refuse to select such appraiser within twenty days next after the end of the said ten first years or, by any means, defeat such valuation being made, this lease shall be forfeited and cancelled, if so determined by the said Thomas Allen, or his legal representatives.

"And for the third ten years of the term herein granted next after the expiration of the above second ten years, the said party of the second part, their heirs, executors, administrators, or assigns, shall yield and

Vol. 137 mo—14

pay for the said leased property a rent equal to five per cent per annum, on the value, at the end of the said ten years of the said lot of ground, exclusive of buildings, payable semiannually, said value to be ascertained and determined in the same manner, and subject to the same conditions, as in the second ten years, herein above provided.  *  *  *"

On the eighteenth of October, 1873, Thomas Allen assigned his interest in said lease and rental to his co-lessor, Ann R. Allen.

In May, 1874, the St. Louis & Iron Mountain Railroad Company was consolidated with other railroad companies, thereby forming the defendant company, which succeeded to all the property rights and obligations of its said predecessor.

In April, 1882, Thomas Allen died.

The promissory notes given for the first ten years' rental having been fully paid, in pursuance of the terms of the lease, Frederick Hill and S. W. Horton were chosen to appraise the value of the premises, who thereupon made an appraisement thereof, as follows:

"We the undersigned appointed by the above mentioned parties to appraise a certain tract of land situated in the Chouquette Tract, with all its accretions made by the N. S. River Improvement, said land containing in all two hundred acres, or survey number 904, and leased by Mr. Allen to the St. Louis, Iron Mountain & Southern Railroad Company, and which land is bounded north by river Des Peres, south by Carondelet sub., east by the Mississippi river, and west by land formerly owned by Stoner and by the commons of Carondelet, respectfully report that we have carefully examined said premises and find the value of said tract of land to be ninety thousand dollars ($90,000)."

Afterward, to wit, on the first day of May, 1883, the plaintiff and her children, and the defendant com-

pany, duly executed, acknowledged and placed of record, an instrument of writing, as follows:

"Whereas by deed of lease made and entered into in duplicate on the first day of May, 1872, by and between Thomas Allen and Ann R. Allen, his wife, of the city of St. Louis and state of Missouri, and the St. Louis & Iron Mountain Railroad Company, the said Allen and wife leased to the said railroad company (now the St. Louis, Iron Mountain & Southern Railway Company) the following described lot of ground in township 44 north, of range 7 east, and being United States survey number 904, situated east and west of the said St. Louis, Iron Mountain & Southern Railway at the junction of the river Des Peres with the Mississippi river in the county of St. Louis and state of Missouri, described in said lease as then containing one hundred and forty-five acres, more or less, bounded north by the river Des Peres, east by the Mississippi river, south by the South Carondelet sub. *et al.*, west by survey line and Jefferson Barracks road, for and during the term of thirty years next ensuing from and after the first day of May, 1872, according to the terms and conditions set forth and contained in said lease, one of the duplicates thereof being hereto attached and made part hereof.

"Whereas, since the termination of the first ten years, said land with its riparian accretions has been valued according to the method and in the manner described in said original lease, and its value ascertained to be ninety thousand dollars, which, according to the terms of said lease, fixes the annual rental for the second ten years, beginning with the first day of May, 1882, at $4,500, payable semiannually.

"Whereas, it has been ascertained that Thomas Allen is dead, and that the leasehold premises is held by his widow, the said Ann R. Allen for and during the

term of her natural life, with remainder to her children, and

"Whereas, her children now living are Elizabeth Donaldson, wife of W. R. Donaldson, William R. Allen, Thomas Allen, Jr., George W. Allen, Bradford Allen, Annie L. Allen and Alice Maud Allen, who agree to ratify said lease and join the said Ann R. Allen in such ratification.

"Whereas, the said St. Louis, Iron Mountain & Southern Railway Company has paid the rental from the expiration of the first ten years, to wit, from the first day of May, 1872, to the first day of May, 1883, and has executed its eighteen promissory notes of $2,250 each, the first due and payable November 1, 1883, and the last due and payable May first, 1892, being semiannual payments from the first day of May, 1883, to the first day of May, 1892.

"Now, therefore, in consideration of the premises, and of the sum of one dollar to us in hand paid by the St. Louis, Iron Mountain & Southern Railway Company, the receipt of which is hereby acknowledged, and of the money paid and to be paid to the said Ann R. Allen during her life and after her death to the said children of the late Thomas Allen and Ann R. Allen, his wife, according to their rights in said land and the terms of said lease, we, the undersigned, do hereby ratify and affirm said lease, and agree that the same shall continue according to its terms and stipulations to the end of the term for which said premises were demised as aforesaid, to which affirmance we do hereby bind ourselves, our heirs and assigns in all respects.

"In witness whereof, the said parties have hereunto set their hands and seals the first day of May, 1883, in duplicate."    *    *    *

The rentals for the second period of ten years at $4,500 per annum having been fully paid by the de-

fendant company in accordance with the foregoing
appraisement and deed of confirmation, Adam Boeck
and Michael Hammel were chosen by the parties to
make the appraisement of the premises for the third
period, who returned the following appraisement
thereof:

"Whereas, Thomas Allen and wife, by lease dated
the first day of May, eighteen hundred and seventy-two,
and duly recorded in the office of the recorder of deeds
in the county of St. Louis, state of Missouri, in book
number 713 and page 341, leased to the St. Louis &
Iron Mountain Railroad Company, a certain lot of
ground in township forty-four north, of range seven
east and being in United States survey numbered nine
hundred and four, situated east and west of the St.
Louis & Iron Mountain railroad, at the junction of the
river Des Peres with the Mississippi river, in the county
of St. Louis, in the state of Missouri, containing one
hundred and forty-five acres, more or less; bounded
north by river Des Peres, east by Mississippi river,
south by South Carondelet sub., *et al.*, and west by
the survey line and Jefferson Barracks road, which
lease was for a term of thirty years next ensuing from
and after the first day of May, eighteen hundred and
seventy-two, which term of thirty years was divided
into three periods of ten each; and whereas, it is pro-
vided in said lease that said lessee shall yield and pay
for said leased ground a rent equal to five per cent per
annum on the value of said ground at the end of each
period of ten years, exclusive of buildings, such valua-
tion to be ascertained and determined by two disinter-
ested, impartial and judicious householders in the
vicinity of the ground, one to be chosen by the said
Thomas Allen, or his legal representatives or assigns,
and one by the said lessee; and whereas, the under-
signed, Michael Hammel, having been appointed by the

heirs at law of the said Thomas Allen, and the under-
signed, Adam Boeck, having been appointed by the St.
Louis, Iron Mountain & Southern Railway Company,
successor of the St. Louis & Iron Mountain Railway
Company, as appraisers of the value of said ground on
the first day of May, eighteen hundred and ninety-two,
the beginning of the last period of ten years during said
term of thirty years, now, therefore, we, the undersigned
appraisers, do hereby certify that the value of the
ground described in said lease is four hundred and fifty
dollars per acre.

"Witness our hands and seals this second day of
August, eighteen hundred and ninety-two."

It appears from the evidence that at the time of
this appraisement (including the accretions thereto
formed since the execution of the original lease) the
leased premises contained two hundred and nine and
eighty-eight hundredths acres, which, at the rate of
$450 per acre, made the value of the leased property
$94,446, and the yearly rental value at five per cent
thereon, $4,722.30.

Thereafter the plaintiff demanded payment of the
rent of the premises at that rate, which the defendant
refused, but tendered payment at the rate of $3,262.50
per annum, being five per cent on $65,250, the value of
one hundred and forty-five acres of said land at $450
per acre.

The tender having been refused, and three semi-
annual installments of the rent having become due,
and remaining unpaid, the plaintiff brought this suit
for those installments, to wit, $2,361.15 for the six
months ending October 31, 1892, $2,361.15 for the six
months ending April 30, 1893, and $2,361.15 for the
six months ending October 31, 1893, and recovered
judgment therefor, less some payments that had been
made on account thereof, and the defendant appealed.

1.   The case was tried by the court without a jury, and the question presented for decision is whether plaintiff, under the terms of the lease and the appraisement of the second of August, 1892, made in pursuance thereof, is entitled to rent at the rate of $450 per acre for the actual number of acres of land contained in the tract at the time the appraisement was made, or only to rent at the rate of $450 per acre for the number of acres recited in the lease, it appearing from the evidence and having been found by the court, "that the appraisers Hammel and Boeck in making their appraisement under the lease embraced the whole tract as it existed at the time of the appraisement and their appraisement of $450 per acre embraced not only the land existing when the lease was executed, but also the accretions subsequently formed and added thereto."

It will be observed from the terms of the lease that the premises were leased to the defendant's predecessor as a particular lot of ground described by metes and bounds, the eastern boundary of which was the Mississippi river; it was to this boundary the accretions were formed, after the execution of the lease. As formed, they were entered upon, enjoyed, and used as a part of the leased premises, by the defendant, and so continued to be up to the bringing of this suit.

The scope of the argument upon this inquiry may be somewhat limited in view of the concessions of the learned counsel for the defendant in their reply brief, from which it appears that their contention is simply that the words "145 acres more or less" in the lease, limit the area of the tract to be valued by the appraisers to the tract as it existed at the time the lease was made. In other words, counsel for defendant endeavor to maintain that while the accretions to this land became a part of the leased premises to the use and enjoyment of which they were entitled by the terms of the

lease, yet they did not become a part of the leased premises for the purpose of determining its rental value.

This paradoxical contention can not be maintained. The premises leased were not "145 acres of land" as then bounded, but a certain lot or tract of land within specific and well defined boundaries, whether the same contained "145 acres more or less." There is no uncertainty or ambiguity in the description of these boundaries and nothing to warrant a resort to the quantity referred to in the lease in order to ascertain the premises leased, or to define its limits. The land leased—the land to be valued in 1882—and again in 1892—under the terms of the lease, was the same tract of land bounded in the lease, whatever the number of acres it might contain at any of these periods.

This specific tract of land had for its eastern boundary the Mississippi river, a natural boundary, to whose changing condition that eastern boundary must conform during the whole life of the lease, whether the tract thereby gained or lost in quantity. *Naylor v. Cox*, 114 Mo. 232, and cases cited. Such is the plain construction of the lease under well settled principles of law. It was this tract of land, having for its eastern boundary the Mississippi river, that in 1882 was estimated by the first appraisers to contain two hundred acres, and appraised by them at the value of $90,000, which was equal to $450 per acre. It was the lease of this same tract of land and the first appraisement thereof made to include all the land to the Mississippi river as the eastern boundary thereof, that was ratified and confirmed by the parties by their deed of May 1, 1883, and it was this tract of land that the appraisers, Hammel and Boeck, on the second of August, 1892, appraised at $450 per acre. They did not undertake to pass upon the quantity of land, but simply said in their appraisement whatever the number of acres there may be within

those boundaries, that land is worth $450 per acre. "That is certain which can be made certain," and all that was necessary to perfect this appraisement and fix the rentals for the third period was to ascertain the number of acres of land contained within those boundaries, multiply it by $450, and five per cent of this product would be the annual rent reserved in the lease, and for which the defendant was liable.     This the court did, gave judgment accordingly, and in so doing correctly construed both the lease and the appraisement.

2.     It is contended that the court committed error in permitting the appraiser Hammel to testify that they as appraisers went over the whole land, accretions and all, and then made their appraisement as stated in their report.     The record fails to show that this evidence was specifically excepted to, but if it had been, there would have been no error in admitting it, as its whole scope and tendency was to identify the land which they appraised, and not to vary or contradict their appraisement.     *Diggs v. Kurtz*, 132 Mo. 250; *Skinker v. Haagsma*, 99 Mo. 208.

3.     These are the only errors alleged that seem to have been brought to the attention of the court below, or which were argued here in appellant's original brief.     In their reply brief, however, it is contended that the judgment is excessive in that it includes rental on a twenty foot strip (representing the difference between one hundred feet and eighty feet of defendant's right of way across the whole tract), the legal presumption being that the right of way was one hundred feet wide instead of eighty feet as assumed by the surveyor Pitzman.

In support of this contention the case of *Hargis v. Railroad*, 100 Mo. 210, is cited, in which it was held that in the absence of any proof on the subject, the

right of way of a railroad will be presumed to be one hundred feet wide.

In this case, however, the right of way was drawn on a map of the premises, with a footnote explaining "that there is no deed on record to the Iron Mountain Railroad for the right of way, but assuming that the width is the same as in South Carondelet Suburbs, namely, eighty feet, I find that the contents of the land northwest of the railroad is one hundred and eight and eight hundredths acres, and southeast of the same one hundred and one and eighty hundredths acres." This map, representing the land with its accretions, and the defendant's right of way thereon, and the number of acres contained, was presented to the counsel for the defendant on the trial, admitted to be correct, and given in evidence, and the defendant is in no condition to complain of this error now, if it be one. Finding no error, the judgment is affirmed. All concur.