The substance of the pleadings and the facts necessary to an understanding of the decision of the Court are fully set out in the opinion of Associate Justice MacRae.
The resolution of Sampson County Alliance, adopted 10 April, 1891, and referred to in the opinion, provided as follows: "That we organize a stock company to enlarge the facilities of the Alliance store; that the County Alliance, the suballiances and the individual members of (442) the alliance be eligible to take stock," etc. *Page 337 
The certificate issued to certain of the defendants under the plan of February, 1889, also referred to in the opinion, was as follows: "This certifies that .......... has contributed to the County Business Agency Fund the sum of ............ dollars, with the privilege of drawing the same out after sixty days' notice, with eight per cent interest."
His Honor, Connor, J., adopting the verdict in response to the issues submitted, by consent found and declared the facts pertinent to the decision of the cause, and gave judgment against certain of the defendants and in favor of others, as referred to in the opinion, and both plaintiff and defendants appealed.
The plaintiff seeks to charge the defendants, twenty in number, and the other defendant, Herring, as their assignee, as copartners in a mercantile venture, under the name of "Sampson County Alliance Store," with the defendant Clute as manager, for the price of certain guano sold by plaintiff to said Clute, as plaintiff alleges, for and in behalf of his codefendants, except Herring, in the years 1890 and 1891. The amount alleged to be due is said to be evidenced by certain notes executed to plaintiff by said Clute in his own name, but, as plaintiff alleges, for and in behalf of his codefendants, and after giving all proper credits, amounting to the sum of $2,908.16, and interest. Plaintiff further alleges that as collateral security for the said indebtedness the defendant Clute, manager and agent as aforesaid, turned over to the plaintiff certain claims for fertilizers sold by defendants through their aforesaid manager and agent, and at the maturity thereof (443) said defendant Clute, manager and agent, collected thereon sundry amounts, aggregating the sum of $1,600, which he did not pay over to the plaintiff, but used for his copartners in their business. And plaintiff further alleges that defendants voluntarily surrendered all the effects, property and choses in action of said copartnership to defendant Herring, and that said Herring has in his hands, as trustee, more than sufficient to pay plaintiff's debt, and plaintiff alleges a demand and refusal by said Herring so to pay.
Plaintiff demands judgment against all the defendants for $2,908.16, and interest, and against Herring that he account for and pay over to plaintiff out of the effects so received by him the said sum. The defendant Clute makes no answer. The other defendants deny the copartnership as alleged, and the giving of any notes by said Clute in their behalf or as their agent, or the purchase by them of any guano from plaintiff, or their liability upon any note or otherwise for said guano. *Page 338 
They deny that they turned over any property to defendant Herring, as alleged, but admit that defendant Clute, as business agent of the Sampson County Farmers' Alliance Store, and certain of the directors thereof executed to defendant Herring, trustee, a deed as assignment conveying to him all the assets of said store for the benefit of its creditors. They further allege that the defendant Clute was the agent of plaintiff in the sale, of the fertilizers, and they deny that any note, account or other thing of value arising from the sale of any commercial fertilizers sold by plaintiff to said Clute ever came into the hands of the defendant Herring, trustee, or any of these defendants.
(444) And defendants, as a second defense, allege that said Clute was agent for plaintiff in the sale of the fertilizers, and not of defendants; that the said fertilizers were delivered by plaintiff to defendant Clute to be sold for the plaintiff; that said Clute did sell said fertilizers for plaintiff and took notes for the same, payable to plaintiff, and said notes were the property of plaintiff in the hands of said Clute as its agent, and that plaintiff took out of the hands of said Clute certain of said notes amounting to about $1,400, and put them in the hands of an attorney for collection. Some of the defendants filed answers denying that they were stockholders in the said store, and one denying that he was a member of the alliance. Two issues were submitted to the jury, and answered as follows:
"1. Did the defendant, G. A. Clute, contract with the plaintiff company in respect to the guano as the agent of the Sampson County Farmers' Alliance Store, or on his individual account?" Answer. "As the agent of Sampson County Farmers' Alliance Store up to 15 July 1891."
"2. What amount, if any, of the proceeds of sales of the guano furnished by the plaintiff company, collected by the defendant, G. A. Clute, was used in the business of the said Alliance Store?" Answer. "$1,658.58."
His Honor, adopting the verdict upon said issues, by consent found other facts, as are set out, and rendered judgment.
The principal contention before us was concerning the act to which we shall presently refer, and from which we shall cite such parts as are pertinent to our inquiry, and its effect upon the organization existing as the time of its passage.
By force of the provisions of chapter 105, Private Acts of 1889, certain persons, their associates and successors, are incorporated under the name and style of "The Farmers' State Alliance of North Carolina," with the corporate powers and privileges therein declared. Section 6 provides "That each County Alliance which has been or may hereafter *Page 339 
be organized is declared to be a body politic and corporate (445) under the name and style of the Farmers' Alliance of the particular county in which said alliance is located," with rights, powers and privileges, among which it "may establish, conduct and prosecute such mercantile and manufacturing business and such other enterprises as will promote the interests and welfare of the said alliance and its members in the county in which it is located."
By section 8 the subordinate alliances which are now or may hereafter be organized in the several counties of the State are created bodies politic and corporate under such name and style, etc.
"Sec. 9. That the County Alliances and subordinate alliances, the incorporation of which is provided for in this act, may succeed to the rights and privileges, adopt the present organization, assume the liability and continue to develop and execute the general plan and purposes of the associations respectively known as the County Alliances and subordinate alliances as now existing and organized under their constitution, by-laws, rules and regulations; shall be corporate bodies and invested with the corporate powers, rights and privileges herein granted to county and subordinate alliances, subject to the supervision and control of the Farmers' State Alliance."
"Sec. 11. That the president, secretary and treasurer or other chief officers of the said several alliances now existing in this State, with the executive committee of each, may immediately accept and adopt this act of incorporation, and thereupon they shall severally be invested with the corporate powers, rights and privileges conferred by this act under their present plan and organization; provided that the failure or refusal of any one or more of the said alliances to accept this charter or act shall not affect or prejudice those which do accept, nor prevent (446) them from becoming incorporated under this act and enjoying the rights and privileges therein conferred." This act was ratified 7 March, 1889, and took effect from and after its ratification.
The defendants contend that the Sampson County Alliance, which had already been organized and begun to carry on a general merchandise business in February, 1889, became a corporation by force of the statute on 7 March, 1889, and, therefore, that for any obligation contracted in said business the members, being stockholders, are not personally liable.
But a corporation being an artificial person, a creation of law, whose foundation is the grant of a franchise, it follows manifestly that there must be an acceptance of the grant or charter before the same can take effect. One cannot be made a corporator without his consent. 1 Lawson R. 
R., sec. 338 et seq.; Angell Ames on Corp., sec. 81 et seq. The *Page 340 
form or manner of such acceptance depends in a great degree upon the charter or grant. There is abundant authority to the effect that no particular form of acceptance is necessary, but any act unequivocally showing an intention to accept the charter is sufficient. 1 Morawetz Pr. Corp., sec. 23; Bank v. Dandridge, 12 Wheat., 64; Angell Ames,supra, 83. It is not every slight deviation from the requirements of a special act of incorporation, in regard to acceptance or organization, which will avoid the charter and make the individual members liable as partners, although as a rule a strict compliance with the enabling act is required in the formation of corporations under general laws. It is said in 1 Beach Pri. Corp., sec. 16: "And there should seem to be a distinction between a case where the plea of nul tiel corporation is set up in a suit between a corporation and a stockholder or other (447) individuals to defeat an alleged liability and the case of a suit against individuals who claim exemption from individual liability on the ground of having become a corporation under the provisions of a general statute. In the latter case a stricter measure of compliance with statutory provisions will be required than in the former."
We were at first strongly inclined to the conclusion that a presumption had arisen of acceptance of the charter by the Sampson County Farmers' Alliance immediately upon the ratification of the act; but upon a closer examination of the act in question we find that by section 11 some unequivocal act of acceptance is required, something further than simply a continuance of the business under the then existing plan, which might well have warranted the conclusion of an acceptance but for the provision of said section 11. It was in contemplation that those already organized should signify their acceptance of the corporate powers through their chief officers and executive committee, and the failure or refusal so to do by one or more of these organizations was not to prejudice those who did accept. This leaves no room for that latitude of construction which would presume an acceptance by reason of a continuance to carry on business as it had been done before the act.
It may be considered well settled that as the acts of private persons, even of the most solemn nature, may be presumed or proved by presumptive evidence, so, as to the acts of a corporation, if they cannot be reasonably accounted for but on the supposition of other acts done to make them legally operative and binding, they are presumptive proofs of such other acts. Middlesex v. Davis, 3 Met., 135; Bank v. Dandridge,supra; 1 Waterman Corporations, p. 137. In this case, however, the reasonable inference from the failure to take any steps under the act of incorporation, and a continuance of the business precisely as before, was that this association preferred not to accept the proffered (448) charter. *Page 341 
We are brought, then, to the conclusion that up to 10 April, 1891, there was no act on the part of the Farmers' Alliance of Sampson County from which we may presume an acceptance of the corporate franchises tendered by the act of 7 March, 1889.
On 10 April, 1891, this association indicated its acceptance by a resolution which, although it did not mention the act, plainly shows that its authors had the act before them when the resolution was drawn. This resolution was followed by a reorganization on 15 July, 1891, and the business was continued until 15 January, 1892, when an assignment was made for the benefit of creditors.
We are of the opinion, and so hold, that the resolution of 10 April, 1891, was an acceptance of the charter, and that the members of the corporation are not personally liable for the debts incurred by the corporation.
And we also hold that before 10 April, 1891, the business was a copartnership, a joint-stock company, which, in North Carolina, in its relation with creditors, is none other than a copartnership, and that all those persons who were members of the said association before the date last named are liable jointly and severally for the debts contracted by the said association while such persons were members thereof.
We concur with his Honor that the certificates issued to certain of the defendants under the plan of February, 1889, did not constitute them copartners with the Sampson County Alliance, for the reasons stated, and "that the plaintiff company is entitled to judgment against the defendant Clute for the total amount due upon said notes, for want of an answer."
His Honor, by consent, adopting the response of the jury to (449) the issues submitted, found the facts upon which he based his judgment, and by those facts we are bound. Fertilizer Co. v. Reams,105 N.C. 283.
There was no evidence to show that either of the defendants, except R. M. Crumpler and W. E. Stevens, were members of the Sampson County Alliance between February, 1889, and July, 1891, during which time the indebtedness was contracted, and, therefore, as his Honor held, they are not liable upon such indebtedness.
His Honor also found that defendants R. M. Crumpler and W. E. Stevens were members of the Sampson County Farmers' Alliance between February, 1889, and 15 July, 1890. It will follow, as was held by him, that they are liable upon the debt contracted in May, 1889. And upon the finding that W. E. Stevens was a member of said alliance between 15 July, 1890, and 15 July, 1891, he is liable upon all indebtedness contracted by said alliance, or by its agent, Clute, in its behalf, before the acceptance of the charter on 10 April, 1891. *Page 342 
The notes given the plaintiff by said Clute on 1 May and 1 June, 1891, were after said acceptance, and, therefore, in behalf of the corporation, whose stockholders were not personally liable for its debts, but they were given in pursuance of the contract of 26 January, 1891, made by said Clute with the plaintiff "for the sale of guano." As the contract of sale was made with the copartnership, or, rather, with Clute as agent for his undiscovered principal, the Sampson County Farmers' Alliance, it could not be that the copartners, at the time of the contract, could rid themselves of the obligation by reason of said contract by accepting a charter of incorporation, and becoming a corporation whose members were not individually liable for its debts.
His Honor holds that the said joint stock company (referring (450) to the organization pursuant to the resolution of 10 April, 1891), and the members thereof, either corporate or natural persons, became liable for the amount collected on account of said guano, the notes returned by the plaintiff to the said Clute, agent of said joint stock company, and mingled with its funds and applied to its use. According to the findings of fact these notes were returned by plaintiff to Clute for collection after 15 July, 1891, and he collected $1,658.58 on account thereof, and mingled with the fund and applied to the use of the said Sampson County Alliance Store, of course after the last date and consequently after the acceptance of the incorporation.
We do not concur with his Honor in his conclusion that the members became personally liable on this account for the reason that it was a debt of the corporation, incurred by a reception of the funds arising from collection of notes after the acceptance of the charter. Neither do we concur in the conclusion, if it were so intended to be, that R. M. Crumpler, having become a member of the joint stock company organized 15 January, 1891, became liable for its indebtedness. We see nothing in the findings of fact to indicate that any joint stock company was formed at the last-named date. If it were meant to be the organization under the resolution of 10 April, 1891, we have held that this was an acceptance of the charter and that for any debt contracted after that date the corporators were not personally liable.
We deem it proper to say that, as the argument was entirely upon the construction of the statute as applicable to the contentions of the parties, we have not deemed it necessary to verify the calculation upon which the amounts of the judgments are reached.
The judgments, first, against the defendant Clute for want of (451) an answer, second, against defendants R. N. Crumpler and W. E. Stevens upon the note given in May, 1890, and against W. E. Stevens upon the notes given in May and June, 1891, are affirmed. *Page 343 
The judgment against R. M. Crumpler for $1,658.58, the amount collected by the defendant Clute upon the notes returned to him by plaintiff, after the acceptance of the act of incorporation, and mingled with the funds of the corporation, is reversed.
The amount which shall be collected from defendant Clute is to be credited pro rata upon the judgments against Crumpler and Stevens and W. E. Stevens.
The judgment by consent against defendant Herring, trustee, is affirmed, as also the judgment in favor of the other defendants.
Upon defendants' appeal the judgment is modified as herein directed.
Upon plaintiff's appeal from the judgment in favor of V. J. McArthur and the defendants other than Stevens, Crumpler and Clute, the judgment is
AFFIRMED.
Cited: R. R. v. Olive, 142 N.C. 267.