RAILROAD v. OLIVE.

(Filed October 16, 1906).

*Railroads — Consolidation — Right-of-Way — Injunction
Against Interference — Practice —'Organization Within
Two Years—Forfeiture—Acceptance of Charter—Incor-
poration of Chatham Railroad—Presumption as to Right-
of-Way—Deed for Right-of-Way—Possession of Right-of-
Way—No Presumption of Abandonment—"Completion of
Road"—Use of Right-of-Way—Railroad, Judge of Neces-
sity—Yard, Burial-Ground, etc.*

1. Under Acts 1901, ch. 168, authorizing certain railroad companies to
   consolidate with other companies named therein forming the plain-
   tiff company, and the articles of consolidation and merger executed
   pursuant thereto, all of the rights, privileges, powers, etc., of the
   several companies entering into the merger vested in the plaintiff.

2. A railroad company is entitled to injunctive relief against interfer-
   ence with its right-of-way, without regard to the solvency of persons
   interfering therewith.

3. A railroad company acquires, by the statutory method, either of con-
   demnation or by presumption, no title to the land, but an easement
   to subject it to the uses prescribed.

4. Before a railroad company is entitled to invoke the injunctive
   power of the Court, it must show clearly: (1) That it has a right-
   of-way over the lands in controversy; (2) the extent of such right;
   (3) that defendants are obstructing or threaten to obstruct its use.

5. If there is a controversy in respect to any facts necessary to be
   proved to entitle the plaintiff to the injunction, both parties will
   be restrained from trespassing or interfering until a trial can
   be had.

6. The failure of a railroad company to organize under an act of
   incorporation, within the two years prescribed, does not prevent a
   valid organization thereafter, unless forfeiture has been declared in
   proceedings instituted by the State.

7. The incorporators of a proposed private corporation must accept
   the charter, but from organization by the incorporators pursuant
   to its provisions acceptance will be presumed.

142—17

8. The Chatham Railroad Company acquired its corporate existence by virtue of the Act of 1861, ch. 129.

9. Where a deed, granting a right-of-way to a railroad, limits its extent to "so much and no more * * * than the said company by the act incorporating said company * * * would have a right to condemn for the use of said company," and the act confers the power to "condemn land for right-of-way and all other purposes of said company," and grants "all privileges, rights, etc., of corporate bodies of the State," and the general public statute confers upon all railroad companies the power to condemn land of the width of "not less than eighty feet and not more than one hundred feet": *Held,* the company had the right to condemn one hundred feet and the deed was a valid grant of a right-of-way one hundred feet in width or fifty feet on each side of the center of the track, and the company will not be restricted to the land actually occupied.

10. Under Rev., sec. 388, which was in force at the date of the grant of the right-of-way to the plaintiff by the defendants, the possession by the defendants of the land covered by the right-of-way cannot operate as a bar to or be the basis for any presumption of abandonment by the plaintiff of its right-of-way.

11. Under the provisions of plaintiff's charter as amended by Act of 1863, ch. 26, a presumption of the conveyance of a right-of-way 100 feet on each side of the center of the track to be occupied and used for the purposes of the company, arises from the company's act in taking possession and building the railroad, when, in the absence of a contract, the owner fails to take steps to have the damages assessed within two years after it has been completed.

12. Where a company has constructed a railroad between the termini named in its charter and amendments thereto, the fact that it is building sidetracks does not prevent the bar of the land-owner's claim.

13. A railroad company is entitled to so much of the right-of-way as may be necessary for the purposes of the company, and the denial by a person in the possession of a portion of the right-of-way that the portion in controversy is necessary for the purposes of the company does not raise an issue of fact to be determined by a jury, as the company is the judge of the necessity and extent of such use.

14. When a provision in a charter of a railroad company or a deed granting it a right-of-way prohibited it from entering upon the yard, garden, burial-ground, etc., of the defendants, but no portion of the right-of-way was so used at the date of its acquisition, the right of the company would not be interfered with by the fact that it has been appropriated to such use since.

ACTION by Seaboard Air Line Railway against Percy J. Olive and others, pending in the Superior Court of WAKE and heard by *Judge James L. Webb* at Lillington 3 September, 1906, upon plaintiff's motion for an injunction. From an order denying the injunction, the plaintiff appealed.

*T. B. Womack* and *Hayes & Pace* for the plaintiff.

*Argo & Shaffer, R. N. Simms* and *J. M. While* for the defendants.

CONNOR, J. This case comes up on an appeal by plaintiff from an order of *Webb, Judge,* declining a motion for an injunction, heard upon notice. Plaintiff, in the affidavit of its superintendent, sets up a claim to an easement over the lands of defendants, measuring from the center of its track, one hundred feet on each side. For the purpose of showing title the following statutes were introduced:

"An Act to Incorporate the Chatham Railroad Company," Private Laws 1854-'55, ch. 230. This act confers upon the company, when formed in accordance with its provisions, power to condemn a right-of-way over lands on its route, "one hundred feet wide on each side of the center of its track."

"An Act to Incorporate the Chatham Railroad Company," Laws 1861-'62, ch. 129. This act makes no reference to the Act of 1854-'55. It confers upon the company, when formed, the power "to condemn land for right-of-way and other purposes necessary to carry into effect the purposes of said company," and all "rights, privileges and immunities, and be subject to the limitations and restrictions of corporations in this State."

"An Act to Amend the Charter of the Chatham Railroad Company," Laws 1863, ch. 26. This act makes no specific reference to either of the other acts. Among other provisions, express power is conferred to condemn land for its track, etc., "one hundred feet on each side of the center of the track,"

etc.   It is further provided that "in the absence of any con-
tract or contracts with said company in relation to land
through which the said road may pass, it shall be presumed
that the land on which said road may be constructed, together
with one hundred feet on each side of the center of the track,
has been granted to the company by the owner, and the com-
pany shall have good title and right thereto, and shall hold
and enjoy the same as long as the same may be used for the
purposes of the company, unless said owner, at the time of
finishing the part of the road on his land, shall apply for the
assessment of the value of the land within two years next
after the finishing of such portion of the road."

Two ordinances of the Convention of 1861 amending the
"Charter of the Chatham Railroad," expressly referring to
the Act of 1861.

The Act of 1871 authorizing the Chatham Railroad Com-
pany to change its name to the Raleigh and Augusta Air
Line Railway, Laws 1871-'72, ch. 11; Laws 1899, ch. 68,
authorizing the Raleigh and Augusta Air Line Railway Com-
pany to consolidate with the Raleigh and Gaston Railroad
Company.

Laws 1901, ch. 168, authorizing said companies to consoli-
date with other companies named therein, forming the plain-
tiff company.   Articles of consolidation and merger executed
pursuant to the Act of 1901.

These acts and the articles of merger and consolidation
vest in the plaintiff all of the rights, privileges, powers, etc.,
of the several companies entering into the merger.   *Spencer v.
Railroad,* 137 N. C., 107.

Plaintiff introduced the affidavit of Mr. Jenks, its superin-
tendent, setting forth that the Chatham Railroad Company
was incorporated by the Act of 1863, ch. 26.   That the said
company completed its railroad through the town of Apex, in
which the lands in controversy are situate, more than thirty
years ago.   That the owners of the lands at and near the town

RAILROAD *v.* OLIVE.

of Apex failed to apply for an assessment of the value of the lands taken by said railroad for its right-of-way for more than two years after the construction and completion of said road through their land. That by reason of the construction of the Durham and Southern Railroad, which crosses the plaintiff's road at Apex, and the increase in freights and business, it is essentially necessary that plaintiff shall build additional facilities at or near said town, including side-tracks, warehouses, station, etc., rendering it necessary to use and occupy a large portion of its right-of-way in order that it may meet the demands of the public for transportation of passengers and freight. That, upon the application of a number of the citizens of Apex, the Corporation Commission on 4 August, 1906, made an order requiring the plaintiff and the Durham and Southern Railway Company to erect a union depot and to provide adequate freight facilities at said town within ninety days from date of said order. That plaintiff is engaged in a *bona fide* attempt to obey said order and to that end has a large force of hands making excavations for the union depot, warehouses and sidetracks necessary to provide adequate facilities to serve the public, etc. That defendants are in the actual possession of the land over which its right-of-way runs, and are forbidding and otherwise preventing plaintiff from proceeding with said work.

Defendant J. M. White in behalf of his wife, Mrs. Lydia White, avers, in an affidavit, that the Chatham Railroad Company was incorporated by the Act of 1861 and not of 1863. That said Act of 1863 was an amendment of the Act of 1861. That his wife is the daughter of P. W. Dowd, deceased, and inherited from her father the lot upon which she resides and over which plaintiff claims a right-of-way of 100 feet from the center of its track. That her father, together with a number of other persons, owners of land over which said Chatham Railroad was to be constructed, on 1 May, 1862, entered into a contract with said corporation, a copy of which

is attached. The contract referred to, executed by P. W. Dowd and a number of other persons, recites that whereas the Chatham Railroad Company has been created for the purpose of effecting a communication between the North Carolina Railroad Company and the coal-fields of Chatham County, and whereas the benefits which would arise from the building of said road would exceed the damage, etc.: In consideration of the premises the said parties granted and conveyed to the said Chatham Railroad Company a right-of-way over their lands, with power to enter upon same, "according to the pleasure of said company," to lay out, use and occupy such portion of said land contiguous to such railroad as they may deem necessary for sites for their depots, tool-houses, warehouses, engine-sheds, workshops, water stations, woodsheds or other buildings or yards for the necessary accommodation of said company or for the protection of their property; "it being expressly understood that so much and no more of the lands belonging to, owned or held by us severally and respectively is hereby given, granted and surrendered to the said Chatham Railroad Company, than the said company by the Act of the General Assembly of the State of North Carolina, incorporating said company, and the ordinances of the Convention of the State in amendment thereof, would have a right to condemn for the use of said company." Following this language is a provision that no portion of said lands upon which a dwelling-house, yard, garden or burial-ground is situate shall be entered upon in such a way as to disturb any such yard, garden, etc. This deed is under seal and duly recorded 30 June, 1863. That the said contract gave plaintiff no right to enter upon or take more land than was necessary to construct said road at that time. That said company under and by virtue of the said contract entered upon the land and constructed its road, taking only so much as was necessary for that purpose. That the strip of land sought by the plaintiff in this action is a part of the yard and

garden of defendants J. M. White and wife, and that the construction of the sidetrack would take one hundred feet lying between the dwelling and the present road and the digging of a cut of ten feet, the destruction of a public thoroughfare which has been in existence more than thirty years—thus cutting off all ingress and egress on that side and altogether rendering practically untenantable the house as now situated. That Mrs. White has been in the open adverse possession of this land for more than thirty years. That she has reared her children there, and that she is strongly attached to the property by reason of the memories connected with her long residence upon it. That it is entirely practicable for plaintiff to build its sidetrack upon its own undisputed land and reach the union depot without in any way interfering with the premises of Mrs. White. Defendants admit that they object to plaintiff entering upon the premises, insisting that it has no right to do so. They deny that they have resorted to any other than lawful means to prevent plaintiff entering upon their lands.

Defendant Percy J. Olive in an affidavit admits that none of the other defendants nor their grantors have made any application to have damages assessed for the right-of-way used and occupied by plaintiff and its predecessors. He denies that plaintiff has acquired a right-of-way of one hundred feet in measuring from the center of the track, on each side thereof, or that the road has been completed. He says that the plaintiff is building the union depot, ordered by the Corporation Commission, on land which it has purchased, and that the right-of-way over defendants' land is not necessary to meet or discharge any duties to the public. He also alleges that plaintiff has instituted an action of ejectment to recover possession of the alleged right-of-way, and that it is not entitled to an injunction pending the trial of said action. Defendants insist that before an injunction shall issue restraining them

·from preventing plaintiff entering upon their lands, the issues of fact raised by the affidavits should be settled by the jury.

It is clear that from any point of view which we may take of this case, the plaintiff acquired only an easement over defendants' land. It is also clear that the remedy, if any, to which plaintiff may show itself entitled, whether granted on the affidavits and proofs, or at the end of the litigation, is, in its character, injunctive—either mandatory or prohibitory. It is by this method that the courts protect parties in the enjoyment of an easement, when not left to their action for damages for interference therewith. It would seem clear that when, as in the case of a railroad company, a right-of-way is acquired by any of the statutory methods, or by grant, for the purpose of enabling it to perform its duty to the public, such easement will be protected by injunction. It would be unreasonable to permit a railroad company to acquire a right-of-way for the purpose of constructing its tracks and necessary buildings and, when it is invaded or its enjoyment interfered with, confine the company to an action for damages. In this way the operation of railroads might be so much hindered that they would not be able to discharge their public duties, the primary object for which they are chartered. The law is well stated in Beach Mod. Eq., sec. 676: "The jurisdiction of a court of equity to protect a franchise from unlawful invasion or disturbance by injunction is clearly settled and has been recognized as benign and salutary. The ground of such jurisdiction is usually the prevention of irreparable injury, the avoidance of a multiplicity of suits and the abatement of annoyances in the nature of a legal nuisance. Another controlling reason for interference by equity in such cases is that the public at large have an interest in the protection of such a privilege as well as the party interested. And while the Court will not interpose to prevent a mere trespass of an ordinary character, yet when a trespass or a series of trespasses will

operate to destroy or seriously impair the exercise of a franchise, the apprehended injury will be enjoined."

If one may obstruct the right-of-way of a railroad company and prevent it laying its tracks, or otherwise providing facilities for transportation of freight and passengers, and be responsible only to an action for damages, it would be impracticable for the Corporation Commission to enforce its orders providing for union depots, double tracks and other means necessary to the convenience and safety of the public. Injunctive relief against interference with the use of the right-of-way of a railroad company is not given because of any special consideration for these corporations, but because they are public agencies, chartered, organized and given the right of eminent domain, in contemplation of law, to serve the public. They are a part of the system of highways of the State. We find no difficulty in holding that the plaintiff is entitled to injunctive relief against interference with its right-of-way, without regard to the solvency of persons interfering therewith. It is well settled in this State that the company acquires, by the statutory method, either of condemnation or by presumption, no title to the land, but an easement to subject it to the uses prescribed. *Blue v. Railroad,* 117 N. C., 644; *Railroad v. Sturgeon,* 120 N. C., 225, in which the same charter now being considered was before the Court. *Barker v. Railroad,* 137 N. C., 214.

Before the plaintiff is entitled to invoke the injunctive power of the Court, it must show clearly: 1. That it has a right-of-way over the lands in controversy; 2, the extent of such right; 3, that defendants are obstructing or threaten to obstruct its use. If, upon this record, there is a controversy in respect to any facts necessary to be proved to entitle the plaintiff to the injunction, both parties will be restrained from trespassing or interfering until a trial can be had.

With these preliminary questions disposed of, we proceed to inquire whether, upon all of the testimony and the several

acts under which plaintiff claims to have corporate existence, it is entitled to the relief demanded. We are met, at the threshold, with a controversy in regard to the origin of the corporate life of the Chatham Railroad Company. In any one of the several aspects of the controversy it is necessary to fix the date, and therefore the act, under which the company acquired a legal status. The affidavit of Mr. Jenks states that the company was incorporated by the Act of 1863. The defendants allege that it was incorporated by the Act of 1861. On the argument plaintiff contends that its origin is based upon the Act of 1854. If the plaintiff's contention in this respect is sustained, it had the power to condemn a right-of-way of two hundred feet in width, and it would seem that the deed of Mr. Dowd and others would confer a right-of-way of the same width. This act also contains the provision that an entry raises the presumption of title perfected at the end of two years. If, on the contrary, the corporate existence is based upon the Act of 1863, the deed of Dowd and others, being dated 1 May, 1862, is invalid—there being no corporate entity at that date capable of taking the grant. It is not necessary to inquire whether the Act of 1854-'55, ch. 230, was repealed by the Act of 1861, ch. 26. While there is much similarity in the provisions of the two acts, there are marked differences not necessarily in conflict, but showing that, for some reason, the persons who were interested in the proposed road wished to have a new charter. But one of the persons named in the Act of 1854 is named in that of 1861. We concur with the plaintiff's counsel that the failure to organize under the Act of 1854, within the two years prescribed, did not prevent a valid organization thereafter, unless forfeiture was declared upon proceedings instituted by the State. Womack Pr. Corp., 64-68, where the authorities are cited. While this is true, it may well be that, in view of the express provision that upon failure to begin work within two years,

etc., "the privileges here granted shall be forfeited and cease," etc., those interested in the proposed enterprise preferred to avoid any possible danger of a forfeiture by procuring a new charter. Again, we find that when amendments were desired to the charter from the Convention of 1861, the ordinances by which they were made expressly refer to the charter as the "Act of 1861, ch. 129, ratified 15 February, 1861," etc.

The defendants are not seeking to attack, collaterally, the charter of the company, as in *Railroad v. Lumber Co.*, 114 N. C., 690, but are seeking to ascertain under which of two charters the incorporators organized. It is well settled that the incorporators of a proposed private corporation must accept the charter, but from organization by the incorporators pursuant to its provisions, acceptance will be presumed. *Fertilizer Co. v. Clute*, 112 N. C., 440. Womack Pr. Corp., 76, 77. While there is no direct evidence in the record under which act the company was organized, we find that by the Act of 1863, ch. 26, amendments are made to "The Charter of the Chatham Railroad Company." This act does not expressly refer to either that of 1854 or 1861, but in sec. 4 reference is made to the ordinance of the Convention entitled "An ordinance in addition to an amendment of an act of the General Assembly, ratified the 15th day of February, 1861, entitled An act to incorporate the Chatham Railroad," etc. By secs. 7 and 8 of this amendatory act power is given to condemn a right-of-way over lands "of one hundred feet on each side of the center of the track," etc. This is followed by sec. 9, providing for the acquirement of right-of-way after two years from entry, etc. It will be observed that neither of these provisions is in the Act of 1861, while both of them are in the Act of 1854 in substantially the same language as in the amendment of 1863. This act is manifestly an amendment to the Act of 1861, and not of 1854.

In the light of these facts we are brought to the conclusion that the Chatham Railroad Company acquired its corporate

existence by virtue of the Act of 1861, ch. 129, and that we must look there and to the acts amendatory thereof for the power and method of acquiring rights-of-way. As the right of the plaintiff to a right-of-way over the land owned by Mrs. White is dependent upon an entirely different basis than to the lands of the other defendants, it will be best to discuss this question first. Reading the deed or grant of Mr. Dowd and others in the light of the Act of 1861, we must hold either that it is void for uncertainty, or find some standard by which to apply the maxim *id certum est quod certum reddi potest.* The grant expressly limits the extent of the right-of-way to "so much and no more  *  *  *  than the said company by the act of the General Assembly of the State of North Carolina incorporating said company  *  *  *  would have a right to condemn for the use of said company." The Act of 1861 confers the power to "condemn land for right-of-way and all other purposes of said company."

We are no nearer a solution of the question, as to the width of the right-of-way, when we read the grant in the light of this language. If we hold that a right-of-way of the width necessary to carry into effect the purposes of the company was granted, we are confronted with the question whether the words "purposes of the company" must be confined to the purposes which existed at that time, and that its power to enter and occupy was exhausted when the road was constructed. This construction would, in the light of what we know to be the purpose of constructing a railroad, be entirely too narrow. It would confine the company to the soil actually covered by its cross-ties and rails, with the drains on either side. When we examine the charters of other railroads granted by the Legislature from 1833 to 1860, we find that when the width of the right-of-way is fixed, it is usually one hundred feet from the center of the track. Rev. Code, ch. 61, entitled "Internal Improvements," confers upon all railroad companies the power to condemn land of the width of "not less than eighty

feet and not more than one hundred feet." It would seem that in the absence of any limit in the charter, the Chatham Railroad Company, by the general public law referred to and the express grant of all "privileges, rights, etc., of corporate bodies in the State," had "the right to condemn" to the extent of one hundred feet; and thus we find a standard by which to measure the right granted by the deed of May, 1862. Unless we can, in this way, give effect to the deed by rendering the description of the easement certain, we would be compelled to hold it invalid. The maxim *"ut res magis valeat quam pereat"* admonishes us that it is our duty to uphold the deed if by reasonable construction it can be done. We think that the words, "so much as the said road would have the right to condemn," carry the right-of-way to the extent of one hundred feet, which would be fixed by adopting the center of the track as the point from which the measurement should be made, extending fifty feet on each side. This construction is sustained by the decisions of this Court in *Beattie v. Railroad,* 108 N. C., 425; *Lumber Co. v. Hines,* 127 N. C., 131.

Defendants call to our attention several authorities which apparently militate against this view and hold that where the description is uncertain, the right of this company will be restricted to the land actually occupied by the company. We have examined the cases, and find but one which is not easily distinguished from the language used in the grant before us. In *Fort Wayne, etc., Railroad v. Sherry,* 126 Ind., 334, the grant was a right to construct said railroad agreeably to and in accordance with the laws of the State of Indiana, known and designated as "An Act to provide for the Incorporation of Railroad Companies," etc. The statute authorized the company to acquire by condemnation a right-of-way "six rods in width." The Court was of opinion that as the company was not required to acquire six rods, but could, if it saw proper, acquire less, the language of the statute did not make certain the language of the deed.

It has been held by this Court that a railroad company is not required to condemn the full width authorized by the charter, *Beal v. Railroad,* 136 N. C., 298, but it has the "right to condemn" to the prescribed limit, and this is the standard fixed by the deed. In the case of *Onlhank v. L. S. & M. S. R. R.,* 71 N. Y., 194, the easement granted was a right to lay a water-pipe. It was properly held that when the right was exercised the location could not be changed. We fully concur with the learned counsel for the defendants that such is the law. We are now endeavoring to ascertain the extent of the right. What passed by the deed? In *Hargis v. Kan. City, C. & S. Ry.,* 100 Mo., 210, a right-of-way of indefinite width was given. So, too, in this case. The Court said: "Supposing there was no definite agreement as to width of the right-of-way, but an intention to give the right-of-way, then we think the railroad company in entering thereunder and building its road at large expense acquired the right-of-way to the extent authorized by law. The land-owner has not manifested his intention to give less than the company could acquire under the statute, nor has the company sought to limit its appropriation to any less amount, and it seems to us that the only rule that would be fair and just to both parties in most cases of this sort, so far as the extent of appropriation is concerned, is the rule which the law provides." 1 Wood on Railways, sec. 211. While it is true, as stated in the brief, that Judge Elliott says that when the width of the right-of-way is not specified in the grant the company will, in general, acquire only so much as is actually taken and used, or is reasonably necessary, he adds, "There is much reason, however, for holding that where the width is not specified, and there is nothing either in the contract or in the acts of the parties, indicating that less than the statutory width was granted, it will be presumed that a right-of-way of the full statutory width was intended." The decided cases are not uniform. 23 Am. and Eng. Enc. (2 Ed.), 701. It must be

noted that the grant or deed for the right-of-way signed by
Mr. Dowd is also signed by thirty-three other persons. It does
not appear what distance is covered by the lands of the several
grantors, but it is not reasonable to suppose that the right-of-
way over the lands of so many persons was intended to be
confined to the land actually occupied. We are therefore of
the opinion that the deed was a valid grant of a right-of-way
and that, read in the light of the statutes, its width was one
hundred feet or fifty feet on each side of the center of the
track. This being so, the plaintiff acquired the same right as
if it had condemned the right-of-way pursuant to ch. 61,
Rev. Code.

The question next arises, what use may it make thereof and
whether it has lost or forfeited such rights as it acquired. The
defendant, Mrs. White, says, and we take it as true, that she
and her father have been in the actual occupation and use of
the land, except that portion upon which the track is located,
for more than forty years. Whatever effect such possession
may have had is controlled by the provisions of Rev. Code,
ch. 65, sec. 23; Rev. 1905, sec. 388: "No railroad  *  *  *
company shall be barred of or presumed to have conveyed any
real estate, right-of-way, easement, which may have been
condemned, or otherwise obtained for its use as a right-of-
way, depot, station-house, or place of landing, by any statute
of limitation or by occupation of the same by any person."
This statute was in force in 1862 at the date of the grant to
plaintiff. It was commented upon and sustained in *Railroad
v. McCaskill,* 94 N. C., 746; *Bass v. Nav. Co.,* 111 N. C.,
439. The possession by defendants of the land covered by the
right-of-way, therefore, cannot operate as a bar to or be the
basis for any presumption of abandonment by the Chatham
Railroad Company or its successors. As the other questions
apply with equal force to all of the defendants, we defer dis-
cussing them until we have disposed of the branch of the case
affecting the other defendants.

In regard to the right-of-way claimed over the lands of the other defendants, there being no contract or grant and no con-. demnation, the plaintiff relies upon the provisions of the charter as amended by the Act of 1863, ch. 26, sec. 9, set forth in the statement of facts. The same provision is found in the charter of other railroad companies and has been sustained by several decisions of this Court. In *McCaskill's case, supra,* construing the identical language, *Smith, C. J.,* said: "The presumption of the conveyance arises from the company's act in taking possession and building the railway, when, in the absence of a contract, the owner fails to take steps for two years after it has been completed for recovering compensation. It springs out of these concurring facts, and is independent of inferences which a jury may draw from them. If the grant issued, it would not be more effective in passing the owner's title or estate. Thus vesting, it remains in the company as long as the road is operated of the specified breadth." We had occasion in *Barker v. Railroad,* 137 N. C., 214, to consider the question, and stated the conclusion to which we arrived as to the construction of the statute. The amendment of 1863 conferred upon the Chatham road the right to acquire the right-of-way by presumption, as prescribed by the statute. While the exact dates are not given, we do not understand that any controversy is made in regard to the entry upon the lands and construction of the road by the Chatham Railroad Company since the amendatory Act of 1863, and that there was no contract authorizing such entry. This being so, we can see nothing to prevent the acquisition of the right-of-way under the provisions of the statute by the admitted failure to have the damages assessed within the two years. The defendants deny that the company has ever completed the road. We do not understand this denial to be that the company has not constructed a railroad between the termini named in the charter and amendments thereto, but that by building sidetracks it continues to con-

struct, the condition has not arisen making the bar complete. We think this construction of the statute too narrow. If adopted, the provision would be made of no effect. It will be observed that the requirement in this respect is not that the entire road shall be completed, but that the bar becomes complete at the end of two years "after the finishing of such portion of the road."

As we said in *Barker's case, supra,* "With the policy which prompted the Legislature in the early history of railroad building in the State to put this provision in the charter of the contemplated roads we have nothing to do. Finding them to be constitutional, it is our duty to interpret and enforce them in accordance with well-settled principles of legal construction." The point of view from which charters for railroads were drawn in this State fifty years ago must not be lost sight of in construing them in the light of present conditions. If, to induce the investment of capital in the construction of railroads and development of the country, large privileges were conferred, not inconsistent with the exercise of the sovereign power of the State in controlling them, we may not construe them away without doing violence to sound principle and fair dealing. When these rights-of-way were granted, or statutes enacted permitting their acquisition in the exercise of the right of eminent domain, it was contemplated that they should be of sufficient width to enable the company to safely operate the road and protect the adjoining lands from fire communicated by sparks emitted by the engines. Land was cheap and population sparse. The railroads, as the charters show, were to be built by the citizens of the State, the capital stock to be subscribed by large numbers of people; Legislatures were ready to make broad concessions to these domestic corporations, and, as shown by the record in this and other cases in this Court, the owners of lands, because the "benefits which will arise from the building of said

railroads to the owners of the land over which the same may be constructed will greatly exceed the loss which may be sustained by them," were "desirous to promote the building" thereof and to that end to give to them rights-of-way over their lands. When the road has been constructed and the benefits enjoyed, although new and unexpected conditions have arisen, the rights granted may not be withdrawn, although the long-deferred assertion of their full extent may work hardship.

In *McCaskill's case, supra,* the Court held that the company was not required to use every part and parcel of the condemned land at once, and a permissive use of a portion of such land did not deprive the corporation of the right to take possession of the land when needed for corporate purposes. It is supposed that this decision is modified, in respect to the right of the company to occupy the entire right-of-way, by *Railroad v. Sturgeon,* 120 N. C., 225. We do not find any language in the opinion in that case conflicting with the proposition that the company is entitled to occupy so much of the right-of-way as may be necessary to accomplish the purpose of the original acquisition.

*Mr. Justice Montgomery,* in *Sturgeon's case,* says: "What reasonable meaning can be attached to the words 'for the purposes of the company,' except that the land should be used for such purposes as are conducive and necessary to the conducting of the business of the company, that is, of safely and rapidly transporting and conveying passengers and freight over its railroad? That is the whole business of the company. They need land for no other purposes than to properly construct their road-beds and drain them, build sidetracks when necessary and houses for their employees, warehouses and station-houses with convenient ingress and egress, and for a few other purposes that may have escaped our attention. If the company should need the whole of the right-of-way for these purposes, it has the right to use the whole." In that case the action to recover possession of the right-of-way was dismissed

because the complaint did not allege that the land occupied by the defendant was necessary for the purposes of the company. In *McCaskill's case* this question was not raised.

Defendants say that, conceding the law to be as stated, they deny that the portion of the right-of-way in controversy is necessary for the purposes of the company, and that this denial raises an issue of fact which must be determined by a jury. If this be a proper construction of the law announced in *Sturgeon's case,* very serious consequences would follow. Any person in the possession of the right-of-way of a railroad could, by denying the necessity for its use by the company, drive it to an action of ejectment, delaying the laying of a sidetrack, building of a block-house or station, ordered to be built by the Corporation Commission, or decided by the company to be necessary for the safety of the travelers or moving of freight. We cannot think the Court ever intended to so hold. As the company is held accountable for the condition of its right-of-way, and may be compelled to build sidetracks and other structures necessary for the discharge of its duties to the public, it must have the co-relative right to be the judge of the necessity and extent of such use. The question was presented and discussed by *Chief Justice Shaw* in *Brainard v. Clapp,* 64 Mass., 6. After a clear statement of the extent to which railroad companies may use their right-of-way at the time of construction, he says: "And the Court are also of the opinion that the right and power of the company to use the land within their limits may not only be exercised originally, when their road is first laid out, but continues to exist afterwards; and if, after they have commenced operations, it is found necessary, in the judgment of the company, to make further uses of the land assigned to them for the purposes incident to the safe and beneficial occupation of the road, * * * they have a right to do so to the same extent as when the railroad was originally laid out and constructed." In that case the Judge charged the jury that they were the judges of

the necessity. The Court says: "We think the jury ought to have been instructed that the company had a right, under the powers given them by their act of incorporation, to cut down the trees in question, as one of the acts to be done on the land within the five rods, to fit and prepare the track for the safe and convenient use of it for the transportation of persons and freight by cars and locomotive engines; that they were the judges of what this exigency required." This we think the correct view. Of course the right is limited by the express words of the grant, "for the use of the company." Within that limit the officers of the company must be permitted to exercise their judgment. To permit others to do so would seriously interfere with the power of the roads to meet the constantly increasing demands of the public.

We have not discussed the provision in the deed or the charter prohibiting the plaintiff from entering upon the yard, garden, burial-place, etc., of defendants, because it is not alleged that any portion of the land in controversy was so used at the date of the acquisition of the right-of-way. If it has been appropriated to such use since, the right of the plaintiff would not be thereby interfered with. In drawing the injunction order provision should be made to prevent any unreasonable or unnecessary damage to defendants' premises, by affording reasonable time for gathering crops, removing fences and otherwise protecting defendants' property. These matters may be dealt with by the Court in the order to be made herein.

Upon a careful and anxious examination of the entire record, we find no controverted facts affecting the legal merits of the case. We are of the opinion that there was error in his Honor's order refusing the injunction. That in regard to the lands of Mrs. White, the plaintiff is entitled to a right-of-way of fifty feet on each side of the center of the track to be occupied and used for the "purposes of the company."

That in regard to the other defendants, the right-of-way extends one hundred feet on each side of the center of the track for like purposes. That the defendants should be restrained from preventing or interfering with the use of such right-of-way. That this opinion be certified to the Superior Court of Wake County, to the end that further proceedings may be had in accordance therewith.

Error.