[Civil No. 1138.   Filed March 25, 1911.]

[114 Pac. 971.]

SANTIAGO AINSA, Administrator With Will Annexed of the Estate of FRANK ELY, Deceased, Plaintiff and Appellant, v. THE NEW MEXICO AND ARIZONA RAILROAD COMPANY, a Corporation, Defendant and Appellee.

1. ADVERSE POSSESSION—COLOR OF TITLE.—Decrees under condemnation for a part of a railroad's right of way and the filing and approval of a map under act of Congress of March 3, 1875, chapter 152 (18 Stat. 482 [U. S. Comp. Stats. 1901, p. 1568]), granting rights of way through unoccupied land, constituted color of title.

2. RAILROADS—RIGHT OF WAY.—Where a railroad authorized to appropriate a right of way two hundred feet wide, built its line through

public land, and, where the land had been filed upon, condemned a way one hundred feet wide and filed a map under act of Congress of March 3, 1875, chapter 152 (18 Stat. 482 [U. S. Comp. Stats. 1901, p. 1568]), granting rights of way through unoccupied land, and at that time there was nothing of record in the United States land office showing that the land in controversy was within a Mexican grant, as against one claiming under the grant, which was valid, the railroad acquired a right of way one hundred feet wide.

APPEAL from a judgment of the District Court of the Second Judicial District, in and for Pima County.   John H. Campbell, Judge.   Affirmed.

The facts are stated in the opinion.

Selim M. Franklin, for Appellant.

The railroad company, having constructed its road through the San Jose de Sonoita Grant without any right, license or consent of the owner thereof, is only entitled to a right of way for its roadbed as actually constructed, and it has no right, easement or title whatsoever to a strip of land fifty feet, or any other width, on each side of said roadbed, as claimed by it, and awarded by the court.   *Omaha & R. V. Ry. Co.* v. *Rickards,* 38 Neb. 847, 57 N. W. 739; *Louisville & N. R. Co.* v. *Smith,* 141 Ala. 335, 37 South. 490; *Prather* v. *Western Union Tel. Co.,* 89 Ind. 501.   Where a railroad company enters upon land without any pretense of title, in the absence of a designation of boundaries, there is no presumption that the corporation has appropriated for its right of way a strip of the usual width, or all that the statute allows it to take for that purpose. . . . It took possession without a shadow of right therefor.   Such possession is limited to that portion of the lot actually occupied by the company.

U. T. Clotfelter and E. W. Camp, for Appellee.

There is nothing in the record upon which the assertion that the railway was built through the grant without the consent of the then owner can be expressly or impliedly based. There are facts which constitute ample foundation for a presumption to the contrary.   When "possession and use are long continued, they create a presumption of lawful origin;

that is, that they are founded upon such instruments and proceedings as in law would pass the right to the possession and use of the property." *Fletcher* v. *Fuller*, 120 U. S. 534, 7 Sup. Ct. 667, 30 L. Ed. 759; 22 Am. & Eng. Ency. of Law, 2d ed., 1289.   This presumption has always been held to arise when the possession has been continued and the enjoyment of the property undisturbed for a period of time equal to the period of the statute of limitations.

In order to indulge in the presumption that the road was built through the grant without the consent of the owner, the court must presume that appellee acted in violation of the law—committed a trespass.   In this case it must be assumed that appellee built its railway through the grant with the consent of the owner, the predecessor in interest of the plaintiff and the question as to the extent of the rights acquired must be determined by the principles of law laid down in the decisions in cases where the railway track was built under the express permission and consent of the owner of the land through which it extended.   When this railway was built, companies like appellee were empowered by the laws of Arizona "To lay out their said railroads, or either thereof, not exceeding two hundred feet wide."   Act No. 37 of 1879, sec. 18, subd. 4; *Hargis* v. *Kansas City Ry. Co.*, 100 Mo. 210, 13 S. W. 680; *Louisville & M. R. Co.* v. *Elleston*, 32 Ky. Law Rep. 1169, 108 S. W. 858; *Jones* v. *Erie etc. R. Co.*, 144 Pa. 629, 23 Atl. 251; *N. P. Railroad Co.* v. *Smith*, 171 U. S. 260, 18 Sup. Ct. 794, 42 L. Ed. 157.

DOAN, J.—On June 1, 1892, Santiago Ainsa, as administrator of the estate of Frank Ely, brought suit in the district court of Pima county against New Mexico & Arizona Railroad Company to quiet title to a Mexican land grant known as the "Rancho San Jose de Sonoita."   The district court rendered its judgment on March 31, 1909, decreeing the title to be in Ainsa as administrator, subject, however, to the right of way of the defendant railroad company, consisting of a strip of land fifty feet in width on each side of the center of the roadbed of said railroad as constructed through the grant.   From this judgment and the denial of a motion for a new trial, Ainsa, as administrator, has appealed to this court.

The case was tried upon an agreed statement of facts, the affidavits of Epes Randolph and W. Bradford, which are not controverted, and some documentary evidence, the truth of which was conceded, so there are no disputed questions of fact. The facts, briefly stated, are as follows: In the years 1880, 1881, and 1882 the railroad company extended its line across the premises in dispute, and constructed its roadbed substantially where the same has ever since been, and is now located and operated, but the same was not at that time, nor at any time before the commencement of this suit, inclosed within the line of any fence. The right of way in dispute herein lies within the external boundaries of a confirmed Mexican land grant that was granted in 1825 to one Leon Herreros. From December 29, 1879, to April 25, 1887, one Matias Alsua was the owner of said grant under conveyance from Herreros. Prior to 1882 portions of the land in controversy, where the government survey had been extended, had been filed upon by settlers under the public land laws. To secure entry upon these, the railroad company resorted to condemnation proceedings, and in each instance condemned a right of way one hundred feet wide, being fifty feet on each side of the center line of the roadbed, and extending through the several different tracts of land. The appraised value of the land in these several instances was paid by the railroad company, in the aggregate amount of $2,209.35, and duly certified copies of the decrees of condemnation were recorded in the office of the recorder of the county in which the lands were situated in the months of April and August, 1882. At this time there was nothing of record in the United States land office showing the claim of anyone to the land under a Mexican grant, and the railroad company filed a map of its right of way over that part of the grant unoccupied by settlers, which map was approved by the Secretary of the Interior in 1882 in compliance with an act of Congress of March 3, 1875, chapter 152, (18 Stat. 482 [U. S. Comp. Stats. 1901, p. 1568]), granting rights of way two hundred feet wide to railroad companies through unoccupied public lands. The record is silent as to whether Alsua objected or expressly consented to the building of the railroad through the grant. The right of way condemned as aforesaid extended about half way through the said grant, and that claimed under the provisions of the con-

gressional law relative to the acquirement of unoccupied public lands extended the rest of the way through the said grant. On the 25th of April, 1887, Frank Ely acquired the premises included within the boundaries of said grant by a conveyance from the said Alsua. Frank Ely died in the year 1891, and in November, 1891, the appellant herein, Santiago Ainsa, was appointed administrator, with the will annexed, of the estate of said decedent, and duly qualified as such administrator, and was such at the date of the institution of this suit. After the commencement of this action, the United States filed its petition in the United States court of private land claims against the appellant herein and others. The court of private land claims decided against the validity of the grant. On appeal to the United States supreme court this judgment was reversed, and in August, 1902, a decree was entered in conformity with the mandate of the United States supreme court, confirming the validity of the grant to the said Herreros, his heirs, successors in interest and assigns.

The affidavits of Randolph and Bradford, which are not controverted, show: That the roadbed in the part of the right of way in controversy in this action lies along a watercourse, and through a narrow and rugged canyon with more or less precipitous walls. That this portion of the line of railroad follows largely the course of the water in said canyon, and runs at various points in close proximity to the stream. At times in the past the water in said canyon has encroached upon the roadbed, necessitating its removal and reconstruction and relocation, and land slides have occurred in the canyon necessitating other changes in the track. That the same things will, with reasonable certainty, occur in the future more or less frequently, necessitating other changes and removals of the track. That, on account of the topography of the country, the proximity of the stream to the roadbed, occasional heavy rainfalls in the watershed of the stream, and the slipping of the walls of the canyon, it is, and always since the construction of that portion of the line of railroad has been, necessary to have a right of way therefor at least one hundred feet in width. That this portion of the line of railroad cannot be successfully maintained and operated upon a right of way of less width than one hundred feet; that is to say, of a width of fifty feet on each side of the center line

of the roadbed as the same has been constructed and is being operated. That without a right of way of said width it will be impossible for the company to properly maintain said portion of said line of railway, and the roadbed therefor, and to provide necessary drainage protection for the track. About one-third of the total length of said line of railway runs through cuts of considerable depth, necessitating such wide excavations that in many places the top of the slopes on the sides of the track will be fully fifty feet from the center line thereof, and in other places along said track it is necessary to maintain fills which require widening and strengthening from time to time. Upon these facts appellant concedes a right of way in appellee, and the only question presented by this appeal is: How wide is the right of way?

The appellant concedes that: "It is the settled law in Arizona, so decided by this court, and by the supreme court of the United States, that, when a railroad company constructs its road through the lands of another without the owner's consent, neither such owner nor his grantee can regain possession of the land so taken by suit in ejectment, or trespass, or any other kind of action. *Donohoe* v. *E. P. & S. W.*, 11 Ariz. 293, 94 Pac. 1091, 214 U. S. 499, 29 Sup. Ct. 698, 53 L. Ed. 1060; *N. Pac. R. Co.* v. *Smith*, 171 U. S. 260, 18 Sup. Ct. 794, 43 L. Ed. 157; *Roberts* v. *Northern Pacific Railway Co.*, 158 U. S. 1, 15 Sup. Ct. 756, 39 L. Ed. 873. But this only applies to the land actually taken and used by the railroad. It does not and cannot apply to the lands which the railway company has neither taken nor used."

Appellant contends that the company, not having, by resolution of its directors, declared one hundred feet necessary for its use, and not having inclosed that area within a fence, should be held by the court to have only appropriated the land which the roadbed occupies. Independent of the necessity for the use of the entire one hundred feet, shown by the depositions in this case to be required, to render effectual the ground actually occupied by the roadbed, and to enable the railroad company, as a public utility, to maintain and operate its road, and thus discharge its duty to the public, the cases cited by the appellant hold just the contrary, and are supported by the great weight of authority on that subject. The rule announced is that a railroad company appropriating land under

right of eminent domain may limit the width of its appropriation to less than that permitted by its charter, but, unless such limitation affirmatively appears, it will be presumed that it has appropriated the full width allowed by its charter. *Jones* v. *Erie Ry. Co.*, 144 Pa. 629, 23 Atl. 251; and cases cited. The articles of incorporation of the appellee, the act of Congress, and the statutes of Arizona, under which it was operating when it constructed this road, empowered it to appropriate two hundred feet for a right of way.

The case on which appellant relies to establish the contrary rule—*Omaha & R. V. Ry. Co.* v. *Rickards*, 38 Neb. 847, 57 N. W. 730—holds: "There is a marked distinction between a possession acquired under a claim of right or color of title, and where possession of land is taken and held by a mere usurper or intruder. Where a party's occupancy is under a color of title, his possession is regarded as being coextensive with the entire tract described in the instrument under which possession is claimed. On the other hand, where one enters without color of title, his possession is confined to the land actually occupied. . . . The rule stated applies to corporations and individuals alike. . . . A right of way of a railroad is generally one hundred feet wide, and probably, where real estate is sought to be appropriated for that purpose by the power of eminent domain, and the width required for right of way is not specified in the proceedings, . . . it might be held that the customary or usual right of way was acquired. . . . Where a railroad company enters upon land without any pretense of title, in the absence of a designation of boundaries, there is no presumption that the corporation has appropriated for its right of way a strip of the usual width, or all that the statute allows it to take for that purpose." The appellee in the case at bar entered under color of title. The decrees under condemnation for part of the right of way, and the filing of the map and its approval by the Secretary of the Interior in compliance with the act of Congress of March 31, 1875, for the other part thereof, constitute color of title under all definitions of the term.

The case of *Roberts* v. *N. P. R. R.*, *supra*, a suit to quiet title, and a leading case on this subject, supports this rule. The court, considering that case on the assumption that the grant by the county to the railroad company was beyond the

power of the county and invalid, decreed the title in the company, but held such decree to ''apply only to those portions of the land in question which have been actually occupied and used by the railroad company, for corporate purposes, or, in other words, to such lands as the railroad could have condemned by the exercise of its right of eminent domain.'' Under this rule, it appears that the only question to determine in this case is whether the company appropriated a right of way two hundred feet wide over the unoccupied · portion of the land, and one hundred feet wide over that condemned, or whether, having only appropriated a right of way one hundred feet wide by its condemnation proceedings, the decrees in which were of record, and thus affording constructive notice to Ely when he acquired the property, it would be restricted to an appropriation of a right of way one hundred feet wide through the entire grant. As the company has waived any claim for more than one hundred feet, we need not determine that question. The authorities, however, all sustain the judgment of the lower court in determining that the company appropriated a right of way one hundred feet wide. *Roberts* v. *N. P. R. R., supra; Jones* v. *Erie etc. R. Co., supra; Hargis* v. *Kansas City Ry. Co.,* 100 Mo. 210, 13 S. W. 680; *Seaboard Air Line R. Co.* v. *Olive,* 142 N. C. 257, 55 S. E. 263; *Northern Pacific Co.* v. *Smith, supra; Prather* v. *Telegraph Co.,* 89 Ind. 501; *Day, Williams & Co.* v. *Railroad Co.,* 41 Ohio St. 392, 20 Am. & Eng. R. R. Cas. 359.

This being the only question presented, the judgment of the lower court is affirmed.

KENT, C. J., and LEWIS and DOE, JJ., concur.